Good morning, Your Honors. May it please the Court, Henry Cruz for the petitioner, Mr. Marquez-Cruz. There are two issues in this case. The first issue is whether substantial evidence supports the agency's finding that Mr. Marquez failed to file his asylum application within a reasonable period after the changed circumstances that gives rise to his asylum claim occurred. And the second issue is whether substantial evidence supports the agency's finding that Mr. Marquez failed to establish a clear probability of persecution or torture in Mexico. And, of course, Mr. Marquez's position is that substantial evidence does not support either agency determination. Regarding the first issue, in general, an asylum applicant is required to file his asylum application within one year of his arrival to the United States. There is an exception when changed circumstances arise that materially affect the applicant's eligibility for asylum. Now the regulations require, in such a case, that the applicant file his application within a reasonable period given those changed circumstances. And a reasonable period is not defined by the Act or the regulations. However, the Board does hold that, and I believe the Court has agreed that, what needs to be considered are the specific facts in the case in determining whether the application was filed within a reasonable period. Well, for me, the difficulty on this proposition is the specific circumstances include he's charged with domestic abuse, and it's only after that charge is entered that he decides to apply for asylum. That seems to be the triggering event. Yes, Your Honor, that is correct. And I guess one of our arguments is that the Board didn't really seem to explain why Mr. Marquez's lack of knowledge of asylum as an option under the circumstances of his case, being his family being threatened and harmed in Mexico, how he could, based on those facts, have known that he was eligible for asylum in the first place. And it seems the Board just kind of decided that that isn't a valid reason to establish the 10-month period as a reasonable period. But the Board doesn't really explain why that can't be. Why can't an individual who does know about some facts that, in this case, harm to his family in Mexico, why that individual should automatically assume or know that he may be eligible for asylum, especially when we're talking about the complexity of the eligibility issue in itself in this case? If, as the government has raised, ignorance of the law isn't a defense, well, I would first... When did he, what amount of time are we talking about? Ten months, Your Honor. Ten months. Ten months from the time that he... My inference, or maybe it's a matter of the record, is that the domestic violence incident brought him in contact with an attorney, and presumably it was the attorney who surfaced this. That is correct. Maybe. Whatever. So I can sympathize that someone would not, steeped in immigration law, would know about family groups and fear of future persecution. But then once he was made known to him, why the delay? Well, Your Honor... In other words, why is the BIA abusing its discretion to conclude on the facts of his case that, you know, waiting ten months when you do know is unreasonable? Your Honor, I should clarify. It was ten months from the time that he knew about the facts in Mexico that eventually gave rise to his claim. However, he only filed within two months of knowing that he was eligible for asylum. Yes, Your Honor. So it was actually only two months after he met with his attorney that he actually filed for the asylum application. Yeah. You know, this just doesn't feel like the ordinary case. I mean, typically what happens is somebody comes into the country. They may have a valid asylum claim, maybe not, close to the line, but certainly a plausible one. A year and a half goes by after they've come into the country, so they've sort of been here illegally or out of status, and then they file. This is not this case. He's here for a long period. He doesn't come here, I think, and this is consistent with your case, he doesn't come here because he has a claim for asylum when he comes. The claim for asylum that he has one is only because of events that arise after he's been here for quite some time. And then he's picked up for domestic violence. A lawyer says, hey, you might have an asylum claim. I'm hard-pressed to say it's an abuse of the IJ's discretionary authority here to say that that's too long. Well, Your Honor, I guess in your example and as you stated, this is not a case where Mr. Marquez knew about an asylum claim or the facts that gave rise to an asylum claim when he first entered and waited out more than a year. I think the exception in the statute on the changed circumstances puts him within that exception, so I don't think we're just looking at someone who waited a long period of time, years and years, before they acted on their asylum claim. No, I think you're quite right. Let's assume that we should excuse him. So let's move then to the asylum on the assumption that he has. I have trouble seeing how this is on account of a protected ground. Can you explain to me why that's so? Well, Your Honor, I could. I don't believe that issue is before the court. The board didn't even rule on protected ground issue. In fact, its decision on the merits of the withholding and CAT claim were based on clear probability of persecution or torture. It didn't even go into the protected ground issue. In fact, in terms of the well-founded fear on the asylum claim, assuming the court would find that he did file within a reasonable period, the board didn't touch on that issue as well, and I think the government agrees that if the court were to find that he did file within a reasonable period, the case should be remanded for the board to decide on the issue of well-founded fear. I see. So when the court says no probability will be persecuted or tortured, I think you're probably right. This is referring really only to the risk of the bad treatment and not including within its analysis of persecution on account of a protected ground. That's probably right. That's correct, Your Honor. Okay. And I guess going back to the point on the reasonable period, I would just like to note that here in terms of whether there's an abuse of discretion, whether there's substantial evidence, I think the board simply stated that someone who didn't know about the law when the law is so complex, I mean, this court right now, an en banc panel of this court, is currently reconsidering the definition of a particular social group. I mean, I think just asking someone— We do that every couple of months. Yes, Your Honor. Just asking someone— Then we do it, and then the BIA overrules us, and then we have to— When our most learned jurist can't even figure out what the definition of a particular social group is, how can we expect a laborer who has a sixth-grade education like Mr. Marquez to open up the statute and figure out that he's eligible for asylum? That's true. But if somebody came to the United States seeking asylum on the facts of this case, they would come because they were fearful that this was going to happen to them as well. Okay? So to come back to the 10 months after he's here, and he knows he's here illegally, and at any day something can trip him up and he could be deported. And now he has a fear of going back because of what has happened. Why isn't that the relevant trigger? Not when he happened by total happenstance to get a lawyer. My understanding is you're saying, well, he's ignorant of the law. Well, so what's the time limit on— He did it within 10 months because of the accident of domestic violence, but what if he'd gone two years? His ignorance of the law argument, what would be the governing principle under that ignorance of law standard? How long do you get away with being ignorant when you know the facts that are making you now fearful as opposed to just not wanting to be disrupted? Now you're fearing for your personal safety. Yes, Your Honor. And I think what we have is at least a year. The Congress has at least set a standard of a year in the statute as what they thought was a reasonable period of time for someone who, for a new arrival, who knows or has reason to believe that they have an asylum claim to file their asylum application. I think if we're going beyond a year, then I think it would be, in most cases, unreasonable. However, that is not what we have in this case. But the board itself has refused explicitly to adopt a one-year bright-line test. That's correct. And we're not asking for an automatic one-year rule. We have to look at the facts. Then that brings us back to the facts. So we look at the complexity of the issue. I mean, someone opening a statute who is based on religious persecution, they can see, oh, I can— Wait a minute. Let's not wander from—I'm going to come back then to his facts. His facts are that he knew 10 months earlier that he had cause to fear being returned to Mexico. So you're saying the board, having said, we're not going to adopt a one-year rule, you're saying, nonetheless, as a matter of law or, you know, a reasonableness standard, they can't say on the facts of his case that it should be reduced to 10 months? And we're supposed to say, well, you don't have a one-year rule, but when you get it within two months of one year, that's an abuse of discretion. Well, I think when we're looking at—I guess what we're saying is that certainly the complexity of the eligibility issue must be taken into account. It makes sense that— But counsel, wait a minute. There's no evidence in this record that he did anything, did anything. He didn't know whether it was complex or not. All he knew is that he was fearful of going to Mexico, and he knew he had a risk of being deported if he was ever found out. So the onus on him at that point, it would seem to me, even under a one-year rule, would be he's got to go get legal advice. He's got to at least make some effort. There's no evidence in the record to suggest that he tried, he got misled by a notario, he went to any clinics, did anything to find out. It was the pure accident of his getting caught up in a domestic violence altercation that led him to a lawyer. But it wasn't because he was trying to seek immigration advice. That's correct, Your Honor. There's no evidence that he did try to seek any sort of advice prior to being— And he had reason to in the 10-year period, given his personal circumstances. Isn't that fair to say? Married to a U.S. citizen, a child born a U.S. citizen, here he is illegally or without status? Well, Your Honor, he wasn't—I have to double-check the record. I don't believe he was married to the citizen at the time that he was arrested, nor did his U.S. citizen child give rise to any claim of relief since he was here for less than 10 years when he was apprehended. Why don't we hear from the government, and we'll give you a chance to respond. Morning again, Your Honors. If I could just clarify one point, Judge Fischer. You were discussing abuse of discretion. It's just a— Okay. It is a substantial evidence case. Yeah, I understand. And the government does not believe that the evidence compels that a 10-month delay in this case was reasonable. First, his only excuse for filing it after 10 months was that he was not aware that asylum was available. And we know that ignorance of the law is not an excuse. And we know that that's true even in the immigration context. And as you pointed out, Judge Fischer, the fact that— the only impetus for him finding out about asylum was the fact that he was arrested for domestic assault and placed in removal proceedings in June 2009. And all of the cases that Petitioner cites in his brief relating to the issue where this Court has mentioned that immigration law is complex, we agree with that. But those all have to do with voluntarily waiving your right to counsel of your choice in immigration proceedings. That's the context of those cases, the fact that immigration law is complex, and people need to know what they're doing when they give up the right and they decide to represent themselves. And yes, Your Honors, the government could see that the immigration law is complex. But in this case, Mr. Marquez is not charged with knowing the ins and outs of asylum or particular social groups or immigration law in general. He was only charged with understanding that he was not here with status, which he knew when he came in 2002, and that he feared returning home. And his only obligation was to go see an attorney and to tell him the facts of his case and explain. So let me ask you this. Let's take the domestic violence out of the case and imagine that it is otherwise similar. He's here illegally, comes because of basically economic circumstances, which is likely this case is the common case. Events happen at home that all of a sudden make him at least potentially eligible for asylum. Ten months after those events occur, he files for asylum. What then? I think, Your Honor, I'd need to have some more facts. Such as? Well, for example, if he had gone, as you mentioned, Judge Fischer, if he had gone to a notario after two or three or four months and the notario had said, Well, let me give you some facts that are not particularly favorable to him in the hypothetical. At the end of ten months, he says, you know, I've been thinking about this. And he finally goes to a lawyer, and the lawyer says, oh, yeah, this is a plausible claim, files. I think that would be a totally different situation from the one we have at bar. So why is it different? Well, it's completely different because the only impetus for him finding an attorney was that he came to the Department of Homeland Security's attention. Under this scenario, he might have waited years. He might never have had a domestic assault conviction. He might never have filed. Or he might have come to their attention in three years or four years. It's completely, this is just unacceptable to note that until he runs afoul of the law, that that's when he gets his second shot. I also want to point something out, Your Honor. Marquez now claims for the first time in his briefs that the immigration judge failed to consider the fact that he was detained during his ten-month period. And the reason I raise this is it's important, is because he was arrested for domestic assault eight months after his circumstances changed. And under the regulation 8 CFR 1208.5, DHS has an obligation to make information and application forms available to aliens in detention who express a fear of persecution upon their return to their home country. As reflected in DHS form 213, which appears in the record at page 401, Marquez was asked whether he had a fear of returning home to Mexico, and he expressed no fear of returning home. When was that filled out? That would have been on June 4, 2009. After the? After he was arrested. But once he was placed in detention, they are asked, aliens are asked whether they have any fear of returning home. And Marquez said he had no fear. If he had had that fear, then the Department of Homeland Security would have supplied him with necessary forms, and there's even a provision under 1208.5a that provides that expedited consideration shall be given to applications of detained aliens. So not only is it a new claim, by the way, that was unexhausted and not raised to the board, but I think it actually reveals some question about the claim in general. Can I bring you back? I take that point. Bring you back to what the board says. I'm trying to find out what kind of rule is, since the board isn't adopting a one-year presumption of reasonableness or unreasonableness. What we have here, and they say that there's no hard and fast rule of what period of time is reasonable. There's no presumption that a period of less than a year is reasonable. Then they go on and say, we do not foreclose the possibility that a 10-month period may in some circumstances be a reasonable period. We simply conclude that under the circumstances of this case, 10 months is not a reasonable period for the respondent to have waited to seek asylum. Now, you're giving us reasons that are in the record, but what we're reviewing is what the BIA says. So what's the governing principle on reasonable time that one derives from this, that 10 months may be enough, but maybe it isn't? So any IJ across the country can decide, well, I like the way this guy presented to me in court. Therefore, I think 10 months is reasonable. Well, in this case, what is it? Well, it is a reasonableness standard based on the facts and circumstances in that case. Yeah, and what facts and circumstances took the board in this case? Well, I think in this case, there are numerous cases that this court has decided where someone has filed in less than one year, and basically they have no explanation for not filing. And, Your Honor, I would maintain that Marquez's excuse that he didn't know asylum was available to him is as close to having no excuse as you can get. And I think that that is not an excuse. Ignorance of the law is not an excuse. And the fact that he was not aware of asylum until he came to the attention of the Department of Homeland Security reveals that there's nothing magic. He got lucky in a sense that he was able to file within a year. And it shouldn't be, there shouldn't, there is no hard and fast rule about the timetable, especially when the impetus for it was a domestic assault. Would you like me to address the clear probability? Because, again, even if this court finds that he's barred under asylum, the substantial evidence supports the board's decision that there is no clear probability of persecution or torture in this case. If you'd like me to address that point. For just a moment, I think I take your adversary's point that the board really wasn't talking about protected ground. It was really just talking about risk of harm. Absolutely. It was, the board merely spoke to the clear probability of future harm. And the reason that this is important is because the changed circumstances that led Marquez to file his asylum application in the first place was that his uncle was murdered in September of 2008 because these individuals were looking for a man named Ragaciano Alba Alvarez. The following month, unfortunately, his sister was kidnapped and raped several times. During this period, it was only his family. He was in the United States. His family was harmed and they were looking for this individual. They did repeatedly call the home, but on October 22nd, they called the home after having released his sister Elizabeth and said, we want this family to tell us where Ragaciano Alba Alvarez is. And the family member said, we do not know where this man is. Please stop calling us. And they never called again. There is no indication that this group is still after this man, Ragac, that they haven't found him or he hasn't otherwise been arrested by the Mexican government. There's no evidence they're still looking for him. There's certainly no evidence in the record that they're looking to this family to provide this evidence any longer. This was 20 months before the immigration judge's hearing. There is no evidence that they know Marquez is a member of this family. There is no evidence that they think, having resided in the United States since 2002, that he has any information that would lead to this individual. So I think substantial evidence supports the board's conclusion that he failed to establish a clear probability of future persecution or future torture if he is returned to Mexico. Okay, thank you. Thank you. Thank you all. Thank you. Would you like a minute? Yes, thank you, Your Honor. Just a couple quick points. Going to the issue of, in one of the hypotheticals, if Mr. Marquez had gone to an attorney when he knew about the facts happening in Mexico, the harm to his family, I guess my point is that because of the complexity of the law, it's not even clear that an attorney would have recommended that he filed for asylum. In this case, the judge himself found that he wasn't even a member of a particular social group. Again, it's just a hypothetical, but I think that just the fact that he hadn't sought counsel at the time, I think doesn't necessarily just negate our argument that it was a recent case. But, counsel, I think it isn't the point that if he had gone and an attorney had said, look, I don't think you'll be part of a protected social group because there's no law, then he would have that as due diligence, in effect, in his record, and then the board could look at that since they say, well, you know, the attorney screwed up, and he did, in fact. So it seems to me if your scenario played out, then the board would have reason to say, yeah, we can understand. You were diligent, and you got bad advice. Just as if you'd gone to Notario and gotten this. Of course, the Notarios would probably have said, yeah, go for asylum. We'll make one up if you don't have one. It's not even fair the board would have avoided it on those grounds either. And going to the second claim where the board found that there was no clear probability because of the passage of time. They said that I think in this case we have just over a year and a half between the last threat to the family and the petitioner's asylum hearing. They didn't just say that. They said all the things that counsel said. Those are all the reasons they gave. For a year and a half has passed, and the family hasn't been harmed. That was the last threat. But there have been cases by this court, and just two of them that we've cited to, DeMais, Joe, and Tercios, where more than a year and a half, two years passed from the last threat. And since that time, there were no other notes, no other threatening notes. And the court still found that there was a clear probability of persecution. So I think that the simple fact that the time from the last threat up to the asylum hearing, that time and no other threats during that time passed, occurred. I don't think that in itself is enough to negate a clear probability when we have other case law that had the exact same situation of no threats during a longer period of time, and yet they still found clear probability. So we would ask the court to reverse the board's decision and remand. Thank you. Thank you very much. Marquez-Cruz v. Holder now submitted for decision. Nice argument by counsels. Yes, thank you.
judges: Dearie, Fletcher, Fisher